The first case we're going to cue all this morning is the Rose Group v. NLRB. It's appellate number 15-4092 and 16-1212. Counsel, you may proceed. Thank you, Your Honor. Good morning. My name is Stephen Suflis from Ballard Spar, and I represent the Rose Group, the petitioner in this case. I'd like to reserve three minutes of my time for rebuttal. That's granted. Thank you. In this case, we asked the court to deny enforcement of the NLRB's order, which held that our dispute resolution program was an unfair labor practice under the National Labor Relations Act. That decision was the result of a misinterpretation of the Federal Arbitration Act and the National Labor Relations Act. What the NLRB has tried to do with the D.R. Horton Murphy Oil Rule, which was applied in this case, is an end run around 30 years of consistent Supreme Court precedent, which has held that the Federal Arbitration Act means that unless the parties have affirmatively agreed to class action procedures, a class action waiver in an individual arbitration agreement should be enforced according to its terms. But none of those cases discuss the NLRA. And the presence within the NLRA is really one thing, the right to work collectively. That is true, Your Honor, except many of the cases have dealt with other federal statutes of equal importance. In Gilman, we dealt with the Age Discrimination and Employment Act. Dozens of Federal Circuit Court cases have dealt with the Fair Labor Standards Act. And the Supreme Court dealt with the Clayton Act, the Sherman Act, RICO. But the core of each one of those acts was something other than the right to act collectively, and doesn't that make the NLRA different? I don't think it does, Your Honor, because what the NLRA in effect is trying to do, what the NLRB in these cases is trying to do, is say, Section 7 of the NLRB means that we create rights in other statutes that Congress did not intend. But the NLRB can interpret Section 7 according to its expertise in labor matters. And if it interprets Section 7 to include that remedy, can we, aren't we then in a much stricter standard of review than if their interpretation of the FAA, that the way they interpret the labor acts can be pretty blinding under Chevron, right? Your Honor, Judge Roth, I don't think so. And I don't think so because, first of all, we know that even under the most deferential standard of review, the Board still has to properly and reasonably interpret the terms of its own statute. The Fifth Circuit in D.R. Horton, in treating this very issue, said that the Board cannot effectuate the policies of the NLRA so single-mindedly that it steps upon policies that Congress has established in other statutes. And the Third Circuit, an opinion actually written by Judge Greenberg, in a case called NLRB versus Attleboro Associates, that case dealt with a debate at the NLRB that still goes on today as to the definition of supervisory status. And in that case, Judge Greenberg cited with approval a Second Circuit opinion, Red Star Companies v. NLRB, that said the deferential standard, which is ordinarily accorded to the Board, can be forfeited if the Board is misinterpreting precedents in cases and other statutes. And that's what's happened here. And also, Judge Roth, the Board admittedly gets no deference when it comes to its interpretation of Supreme Court decisions, which are crucial here, and the Federal Arbitration Act, which is also crucial here. Counsel, let me ask you this. I noticed that the Second Circuit, in an unpublished opinion here, recently, Ms. Ringwald's furniture, pointed out that there was an irreconcilable conflict among the circuits on these kinds of issues. And I know that there are various petitions for certiorari pending. Are they still pending, and are they going to grant it, or what's the situation? Yeah, Judge Greenberg, those cases are all very recently filed, some within the past few weeks, and the Supreme Court has taken no action on them, to my knowledge. Right. We believe that the proper place to start in this case is with the FAA. And in CompuCredit versus Greenwood, the Supreme Court set out the proper standard to apply in interpreting the FAA when the alleged conflict is with another Federal statute. And what CompuCredit said, and that applies to the proper framework, not the Bullard's analysis in D.R. Horton and Murphy & Oil. What they said is that when another Federal statute is in issue, there is a bright-line test. Unless the language of the other Federal statute specifically says we're foreclosing arbitration, the FAA prevails because of all of the broad Federal policies supporting arbitrability, favoring arbitration, and, as the Supreme Court has said, also establishing and engrafting class-action procedures onto arbitration agreements chills the... Are you referring to the contrary to congressional command concept? Correct. That is correct, Your Honor. And I take it from your point of view, then, unless that other statute explicitly says something about arbitration, it is not contrary to congressional command and, therefore, the FAA supersedes, trumps, prevails? Is that your position? Precisely right, Judge Schwartz. Then what do you do with the fact that we have the NLRA, which says there is a right of employees to collectively act, and this clause says you don't have a right to collectively act? Even on any dispute, you have to act individually and you've got to do it in arbitral form. How do we reconcile that? Sure. I think the reconciliation of the FAA and the NLRB can be made, and it's not done the way the Seventh and the Ninth Circuit said, which says we reconcile these two statutes by saying the NLRB prevails. Even under the approaches of the Fifth and the Second and the Eighth Circuit rejecting D.R. Horton, employees still retain certain rights to take collective and concerted steps. In this case, which involves complaints about the Fair Labor Standards Act, employees can speak to one another. They can recruit one another. They can hire a lawyer. They can pool their resources. They can testify as witnesses for one another. But they have to proceed one person at a time. That is correct, and by requiring them to do that, remember, they've lost nothing. In a Fair Labor Standards Act case, all the remedies are there, including the remedy to attorney's fees. The legal standard is set under the Rosewood Dispute Resolution Program. All the rules are the same. All that has been forfeited is the procedural right, which is clearly a procedural right under FRCP 23, to act as a class, and we believe that as a result they haven't lost much. And, frankly, when you read the dissent in our case, remember Ms. Gamera's dissent, he makes clear the purpose of the NLRA is not to create remedies and procedures in other statutes. That's for Congress to do, not for an administrative agency to do. So what do you consider the NLRA? You consider it just a procedural mechanism for employees to comport themselves and not a substantive right to act collectively? No, not at all. There are substantive rights under the National Labor Relations Act. They're identified in Section 7. The core rights are the right to organization, the right to join a union, the right to collectively bargain. And then Section 7 has kind of catch-all language, and other acts for mutual aid and protection. When you look at Section 1, and I'm sorry we didn't cite this in our brief, Section 1 is the statement of policies under the National Labor Relations Act. It's 448 words long. It talks about collective bargaining. It talks about joining unions. And it's the last six words again that says, or anything else for mutual aid or protection. Well, we have to pay attention to that everything else, right? That's our role is to pay attention to what Congress says, and the everything else matters here. I certainly agree. The everything else does matter. But once again, what the dissenters have said in Murphy Oil and in our very case is, Section 7 can't be stretched that far. Because, in effect, what the board is doing is taking its own view, class action procedures must be followed, and applying that in other statutes. And that's really a role for Congress. If the board doesn't like it, if people don't like Concepcion, if they don't like CompuCredit, if they don't like Italian colors, you go to Congress to fix that problem. You don't go to the NLRB to say, well, all those rules don't apply to us. I wanted to ask to turn it over to the second ground for why the action was taken the way it was, and it has to do with basically avoiding the whole program, because the language about the right to proceed before an administrative agency was not as clear as it should have been, and could have confused a reasonable person. Could our court decide this case just on those grounds, and determine we don't need to reach this interesting statutory issue, because if we agree with the, if we had to defer to the board, this plan violates the tenets of Section 8? Yeah, unfortunately, Judge Schwartz, I don't think you can do that. Because the NLRB is issued in order of finding two unfair labor practices, which, absent action of this court, go into effect. So I don't think you can defer the main issue, because we have, honestly, all these cert petitions pending with the Supreme Court. Well, we have, I think that maybe that's what Judge Greenberg was driving at, is we have all these cert petitions pending, and I believe, at least in late October, one of them may be right for disposition, if the response is timely. What do you think we should do? I'm sorry, let's let Judge Greenberg answer. Well, I think it seemed to me that, you know, it's not for me to talk to the Supreme Court, but boy, if there was ever a situation to grant certiorari, it looked to me like this was it. I mean, you had such a unique conflict among the circuits. It was pretty clearly drawn out. So I don't know that. Judge Greenberg, you are correct. I mean, this is a battle royale, and also cases are pending at the Fourth Circuit, the D.C. Circuit, and the Eleventh Circuit. Judge Schwartz, I think part of the answer that this panel must take into account also is the NLRB is enforcing the Dior-Horton Murphy Oil Rule today. There have been more than 70 opinions on this rule across the country. I'd venture to say that there are hundreds of cases pending in the NLRB's investigative and adjudicative process. So a decision from this panel would at least give employers within the Third Circuit an idea as to what the rules are. Are they enforcing it in the Fifth Circuit? Actually, Judge Greenberg, they are, and there was some criticism in the Murphy Oil opinion about that, even though the Fifth Circuit has, as we cited in our papers, we have Dior-Horton, we have Murphy Oil, and we have at least three other cases where the Fifth Circuit is, where the labor board is continuing to enforce the Dior-Horton Murphy Oil Rule, even in the face of contrary Fifth Circuit decisions. Let me just see, Judge Roth, do you have any further questions? No. Okay. Judge Greenberg, anything else for counsel? No, no, I won't copy this one. Thank you. Okay, great. Thank you very much. We'll hear from you on rebuttal. Thanks. Good morning. Please, the Court. Good morning. My name is Jeff Byrd. I'm here on behalf of the National Labor Relations Court. Your Honors, the Supreme Court has never found enforceable an arbitration agreement that violates another federal statute, and that is precisely what has gone on here. Starting with Section 7, I would respond to the point that this is the other mutual aid and protection clause of Section 7 is some type of catch-all phrase that is not worthy of the same importance of the phrase that precedes it. But the Supreme Court, in every case that I've looked at so far, has approved these class action arbitration waivers. Yes, Your Honor. What makes us think that they wouldn't do it here, too? Because of the, there are several distinguishing characteristics, as has already been discussed a bit. The first is that, of course, that none of those cases involve the National Labor Relations Act with its unique, substantive right to engage in concerted activity. In those cases, they were ancillary. Some of those cases involve federal statutes. They contain ancillary provisions that allow for a certain judicial form provisions of, you know, allowing collective action under the Fair Labor Standards Act, Age Discrimination Employment Act, et cetera. But what distinguishes the National Labor Relations Act is not only granting or conferring upon statutory employees the right to engage in concerted activity that's provided in Section 7, but in Section 8A1 declaring it unlawful under federal law, under the National Labor Relations Act. Look at a situation where you had employees who said, we're older employees. Our boss is getting rid of us. We're sort of being picked off one at a time. And we've got to get together. We have an arbitration agreement in our employment contract, but we really need to get together as a group of older employees and file a class action arbitration. And yet, under the DEA, is that the age employment? ADEA. ADEA. How do you deal with that? Because the Supreme Court has already said that you can't. Their waiver of class action is enforceable under the ADEA, and you're now saying it's not enforceable under the NLRA? What we're saying is that under the NLRA, there has to be an avenue to engage in concerted legal activity. Okay, but they're trying to engage in collective activity under the ADEA to protect their right as older employees, and isn't that one of the things that's included in that catch-all? And yet, we see that the Supreme Court has said that their waiver of a class action is enforceable and that they have to go through individual arbitration under the ADEA. Okay, so that trumps the NLRA, doesn't it? We don't believe it does, Your Honor. So all those cases are wrong, then? No, they're not wrong standing by themselves. They haven't thought to degrade the NLRA, and when they start doing that, then these cases will go forward? Well, there is a narrow line of cases involving statutory employees that carry into court not only their rights under the Age Discrimination and Employment Act, but their right to concerted activity under the National Relations Act. The Supreme Court has not addressed those latter rights because they were not either available in the consumer context or the right to vote. And so you're saying that under the ADEA, those rights are really not available if the employees are smart enough to plead them? No. I think you are, aren't you? Well, I'm sorry, I'm not sure I understand the rights that were available to them. The rights under the ADEA is to work free from age discrimination. But they're employees who are collectively working together. Yes, Your Honor. Because they've got to arbitrate, to have a class action arbitration, even though they waive class action. And you're saying that because they're employees working collectively under the NLRA, they can't have waived class action. But the Supreme Court has said that under the ADEA, you can't enforce class action waivers. So what do we do in that type of situation? There are several points I'd like to make in responding to that. The first is just to briefly reiterate that Gilmer and his other cases did not involve an evaluation of the National Labor Relations Act, and they certainly preceded the Board's decisions in D.R. Horton and the decisions going forward. So is it your view that if the employees had raised the NLRA in the Gilmer case, that the result would have been different because they would have had to consider the NLRA? Well, the Gilmer case is a bit different because there was an individual acting, and by all accounts, although it was not adjudicated, it appears from the face of the decision that the individual plaintiff was not a statutory employee, would not have been considered a statutory employee under the NLRA. So that may have had no bearing on that case. Well, Mr. Armstrong was acting as an individual. How does he qualify? Because there's nothing in any of the submissions that were the stipulated facts that said he was acting as part of a collective. In fact, it seems undisputed he was acting in his individual capacity. So how are we even in collective action land anyway? Well, because we're not having, there's not an enforcement violation here. There was not an attempt to enforce the arbitration agreement. It was the Board's evaluation of the agreement, which it analyzes under the framework of a work rule that's imposed on its employees, on all of its employees, including Mr. Armstrong. Now, Mr. Armstrong was the voice that gave rise to the dispute, but this is an arbitration policy that covers, I believe, upon the record, thousands of employees of the Rose Group. So we do have a concerted element that comes within that framework. Now, as far as the court's decisions under the ADEA, again, I feel like I'm probably repeating myself too much, but that did not involve the specific rights under the initial motion. You mentioned that employment contracts can never have a waiver of collective activity because that would violate the NLRA. Or is your position more narrow? And if it's more narrow, what is it and why? I believe it is more narrow than that. Judge Roth mentioned the waiver of class arbitration. Now, the Board's position does not get into the dispute that was underlying the Supreme Court's FAA jurisprudence. Those cases, if you read them, Gilmer and Coffey Credit, Italian Colors, and Concepcion, these cases involved whether or not arbitration is a sufficient form in which to adjudicate a statutory dispute. The Board takes no position to that. The Board understands that this is a resolved issue, that arbitration has been found sufficient as a form to adjudicate statutory claims. Does that then have to factor in as an element in their consideration of what is covered by Section 7? Well, if I understand the question correctly, I believe that it does come into play in that what the Board is seeking is an avenue of collective action, of collective litigation, whether it be through collective arbitration that's agreed upon in contract with an employer or to go into court. The Board has issued decisions now that are cited in our brief in which courts, they do not invoke the Federal Arbitration Act at all. They are neutral as far as arbitration is concerned. They involve individual waivers of the right to engage in any collective activity, and the Board has found that those are unlawful as well under the same rationale as it has here. The importance of this is that this is not a case about arbitration. As the Ninth Circuit recently stated in Morris, this is a case about individuals' substantive rights under the Act to engage in concerted legal activity, about the long-term decisions of the Board as endorsed by the Supreme Court that the right to engage in concerted activity cannot be prospectively waived, as well as the Federal Arbitration Act cases suggesting the same, that it is the prospective waiver, it is the deprivation of this right to employees that is the problem. Now, this leaves employees in a situation where they can choose to engage in concerted activity or refrain from engaging in concerted activity. Since arbitration is only one form of concerted activity, right? Yes, Your Honor. How, and other forms are available, how can the NLRB say that Section 7 trumps the FAA when the waiver of class arbitration is only a waiver of one possible form of collected action? Thank you for the question, Your Honor. It raises two very good points. The first is that, as we describe in our brief, we believe under the principles enunciated by the Supreme Court in Morton v. Montari and Palm Wonderful that this is not a case in which the National Regulations Act is trumping the Federal Arbitration Act. As Judge Wood put it from the Seventh Circuit, the two work hand in glove. The Savings Clause is quite broad in its reach and its protection of the right to engage in arbitration, but it is not without limits. And those limits come in the form of the Savings Clause, which specifically provides that generally applicable contract offenses that would provide for the revocation of any contract would invalidate or lead to non-enforcement of an arbitration agreement. And we believe this case fits squarely within that. I've read it many times. I've written all our opinions, in fact, at least some of them in the FAA. And it says that the written provision to arbitrate is enforceable, and the exception is, save upon any grounds as exists at law or in equity, for the revocation of any contract. And the way I would have read that would be that, well, if there was duress in signing the contract, or a person was mentally not confident to sign the contract, or there was a forgery or something like that, it's sort of a general term. But you must be reading revocation of any contract, not to be these specific contract things, but to mean that the basis for revocation is that the contract is illegal. That's correct, Your Honor. And we believe that the Supreme Court supports that interpretation. Now, Justice Thomas of the Supreme Court, and I believe, and I'm sorry if I have this mistaken, I believe it was American Express versus Italian Colors, but it may have been Inconcepcion, wrote a single concurring opinion in which no other justice joined, taking just that position that this is about contract formation defenses. But the other justices, Justice Scalia for the majority and the others who wrote with the majority, did not sign on to that concurring opinion, and we believe it's because a broader interpretation of the saving clause is warranted. Illegality is a generally applicable contract defense. We have that here under a competing federal statute, and we believe that the two can work together and be harmonized as they must, or an effort must be taken to harmonize these under the savings clause. Now, if I could make one last point, my time is up. We vehemently disagree with the argument that under CompuCredit and these other cases that the saving clause does not apply when there is a separate federal statute at issue. We think that is an overly restrictive reading of CompuCredit. CompuCredit refers back to cases in Mitsubishi versus Solar, and I believe it's Shuman versus McMahon. Earlier cases that had discussed this had discussed other federal statutes, and in those there was an assumption made that there was no illegality or other generally applicable contract defense, and in the absence of any such defense, then it is true. You look to whether there's a contrary command, but that does not suggest that the saving clause can simply be read out of Section 2 of the FAA merely because a federal statute is involved, and we find no other support for that. We think that that doesn't hold true to the Federal Arbitration Act. Thank you. Judge Greenberg, do you have any further questions? No, I have no more. Thank you. Thank you, counsel. Thank you all. Good morning, Your Honors. My name is Craig Becker, and I represent the intervener, Jeff Armstrong. He's a server at the Rose Group's Hobart Beach Restaurant. I'd like to quickly make three points. One is there can be no dispute that a protected right is at issue. It's not simply the construction of the NLRB. This Court itself has held in Frank Briscoe that the collective pursuit of workplace rights, in that case through the EEOC, is a protected right. So you must begin from the proposition that the agreement, the dispute resolution procedure, interferes with the exercise of a protected right. But as Judge Roth was asking counsel for the NLRB, the Supreme Court's already said you can waive in the age con, ADEA, for example, the right to proceed collectively, even though the ADEA itself provides that mechanism to proceed. That was my second point, Your Honor. Okay. The difference is this, and the Court has been very clear not only in that case but in the whole series of cases, that you can waive procedural mechanisms which are ancillary to the substantive right. In that case, the substantive right was to be free of age discrimination. You can't waive the substantive right. The substantive right asserted here is the one this Court has recognized to take collective action. But the ADEA potential plaintiffs, these old fogies at Applebee's, are saying we need to take collective action to complain about the age discrimination against us. And you're saying they can in spite of Supreme Court rulings. That's correct, Your Honor, because in Gilmer, the sole question before the Court was, does the ADEA preclude an agreement to arbitrate? Now, in fact, the arbitration procedures in Gilmer permitted collective proceedings on their face, and the Court so states in the footnote. But the key difference is what was argued. We don't know whether the plaintiff in Gilmer was covered by the National Labor Relations Act at all. He could have been a supervisor or a manager. But we do know that the NLRA was not argued at all. So all the Court considered was the ADEA. Does the ADEA prevent arbitration? The NLRA was not at issue, and the class action waiver was not at issue, because, in fact, the procedure there permitted class actions. The difference here is the NLRA is asserted, and this Court, the Board, and the Supreme Court have all held that the NLRA protects at its core the right to take collective action. That is a substantive right. We shouldn't get confused by labels. When the Court talks about a substantive right, it's talking about what is the core right protected by the statute. Now, here you may assert your rights under the NLRA in a manner which looks procedural, by filing a class action, by joining a class action. But what the Court is talking about is what is the core right protected by the Act. And the core right here is no different than an agreement to waive the right to be free of discrimination. The dispute resolution procedure waives the core right of this statute. It is no different from an agreement which says, I will not join a union. I will not strike. I will not picket. This is a substantive right. The First Amendment protects the right to petition the government. That sounds procedural, but no one would argue that that's not a core substantive right protected by the First Amendment. So, from your view, does that mean that no employment agreement can include a class-wide waiver? Is that your position? That is our position. The one question might be, Your Honor, whether a union could waive such a right, because under this statute, of course, unions can waive the right to strike, for example, a core right. So it may be that through a collective bargaining agreement, you could agree to arbitration. Most do, of course. And you might even be able to agree to individual arbitration. But it is our position that one of the central evils that this statute was aimed at, and the Norris-LaGuardia Act before it, was agreements to waive rights. The yellow dog contract, the agreement to waive the right to strike. So it is our position that even though other forms of collective action are permitted, as counsel has stated, you can't have an agreement which says you can't join an AFL-CIO union, but you can join other unions. And you can't have an agreement which says you can't exercise your core substantive right to pursue workplace rights in court or arbitration, even though, of course, you can act collectively in other ways. So it is our position that a unilaterally imposed agreement imposed on individuals which precludes collective action to enforce workplace rights in court and in arbitration violates the NLRA. Isn't that way beyond what Congress had in mind when it passed the NLRA? Your Honor, if you go back and look at the history, even before the NLRA, and the scholars' brief on the Norris-LaGuardia Act, excuse me, reviews this history, it's exactly what Congress had in mind. But the NLRB didn't rely on Norris-LaGuardia, so how can we rely on it? I think you can rely on it for two reasons. The Board did not hold anything about the Norris-LaGuardia Act because it doesn't enforce Norris-LaGuardia Act, but it did say our construction of the NLRA must be informed by Norris-LaGuardia, and how could it not be? Some of the language from the National Labor Relations Act, including the very language at issue here, engaging other protected activity, considered activity mutually in protection, excuse me, came from Norris-LaGuardia. And the purpose of Norris-LaGuardia was exactly in Section 3 to bar agreements to give up rights, and that was incorporated in the National Labor Relations Act. Counsel, let's see, Judge Greenberg, do you have any questions for counsel? Well, I have some questions. Okay, thank you. Let me try to briefly respond to two points, and that's going to be hard. Judge Roth, to your point, if the D.R. Horton Murphy oil rule is applied, we've got 25 years of jurisprudence relying upon Gilmer and invalidating class action waivers in a host of other employment-related statutes, which go out the window. That's the practical effect here. And to Mr. Becker's point, that's why the NLRB has very cleverly seized upon this whole issue of substantive right. We know in Mitsubishi the Supreme Court said arbitration doesn't waive substantive rights, and that's why the NLRB in its decisions has been very careful to craft the wording to say these are substantive rights. But, again, to your point, Judge Roth, as well, when you go back and look at the cases upon which the NLRB relies in building this temple, all those old cases all arose in the traditional union management forum. They were contracts waiving the right to join a union. They were contracts waiving the right to collectively bargain. They were contracts that were exacted from employees under the worst unfair labor practices with promises and threats. When you look at the Supreme Court case in Eastex, which is the one that the board relies most upon, Eastex was a retaliation case. That's what happened in that case. And it was retaliation not for filing a lawsuit, not for filing administrative charges. It was retaliation for passing out union literature in the workplace dealing with right-to-work statutes. But this agreement that exists in your position, that it should be enforced, seems contrary to other Supreme Court cases like National Liquorice and J.I. Case, which talk about precluding the enforcement of contracts that bar collective activity. Yeah. When you read National Liquorice, the decision the Supreme Court gave in National Liquorice was the contract was unlawful because it barred collective bargaining. In J.I. Case, the Supreme Court was very careful to say, there are individual agreements which are lawful even in a union context. In J.I. Case was a union context. The employer in that case said, I've got individual agreements with my employees, so I don't have to bargain with the union. The key thing about Eastex, to return just to that case for a moment, Judge Schwartz, Number one, retaliation case. Number two, the Supreme Court, in language which the Board has never cited, says we're not commenting on how far protected concerted activity goes before judicial or administrative avenues. But the language of this particular clause would preclude collective activity. Because the way that the language talks about, it talks about any suit you have against the employer needs to proceed individually, whether it's out of the employment relationship or something different. Yeah. It's got to proceed individually and it's got to proceed in arbitration. If we focus only on the employment disputes, this clause says the mutual aid provision of NLRA has been superseded by private agreement. I think we obviously frame that issue a different way. We frame that issue by saying, and certainly that is the result, but we frame the issue of saying, again, not to be repetitive, but the effect of the NLRB's decision is to legislate procedures for the ADE, ADFLSA. Now, it doesn't matter what Gilmer says. I walk in as an NLRA-covered employee and now Gilmer goes out the window and a whole different rubric applies. We think that's wrong. We think the NLRA cannot be stretched that far. One last point. Counsel for the Board mentioned the savings clause. Real quick, because your time's out. I apologize. When the No Wrong in Savings Clause doesn't apply, when you read all the Supreme Court cases that interpret federal statutes in the face of the FAA, they do not mention Section 2. And Judge O'Connor's dissent in the Ninth Circuit Morris case very recently makes that point clear. The key thing is that even if Section 2 applies, Concepcion puts it to bed, because the Board rule here in D.R. Vernon is identical to the discovery rule that the Court invalidated in Concepcion, and because, in effect, it engrafts class action procedures into an individual arbitration agreement, and that's what Concepcion said violates the FAA. Thank you so much for your attention. Thank you. Thank you, Counsel, for a well-briefed and well-argued case. We'll take the matter under advisement and we'll call up the next case.